**COPY**

E-FILED AND/OR JOURNALIZED
COMMON PLEAS COURT, ERIE COUNTY, OHIO

Mar 4 2021 10:10 AM
LUVADA S. WILSON
CLERK OF COURTS
2021 CV 0089
Binette, Roger E

IN THE COURT OF COMMON PLEAS
ERIE COUNTY, OHIO

MONICA LAYHUE )  CASE NO.
264 E. Merrill Street )
Campbell, NE 68932 )  JUDGE:
 )
   Plaintiff, )
 )
 v. )  **COMPLAINT FOR DAMAGES**
 )  **AND REINSTATEMENT**
VENTRA SANDUSKY, LLC )
c/o Karen Lukco )  **(Jury demand endorsed herein)**
3020 Tiffin Avenue )
Sandusky, OH 44870 )
 )
   -and- )
 )
ED MCGUIRE )
c/o Ventra Sandusky, LLC )
3020 Tiffin Avenue )
Sandusky, OH 44870 )
 )
   Defendants. )

Plaintiff, Monica Layhue, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

### PARTIES AND VENUE

1. Layhue is a former resident of the city of Sandusky, county of Erie, state of Ohio.

2. Layhue is a current resident of the city of Campbell, state of Nebraska.

3. Ventra Sandusky, LLC ("Ventra") is a Delaware limited liability company that conducts business in Erie County, Sandusky, Ohio.

4. Ventra is an employer, pursuant to R.C. § 4112.01(A)(2).

5. McGuire is a resident of the State of Ohio.

6. McGuire is an employer, pursuant to R.C. § 4112.01(A)(2).

7. McGuire is an individual who acted directly or indirectly in the interest of Ventra during his employment.

The Employee's Attorney.™

**EXHIBIT A**

8. All material events alleged in this Complaint occurred in Erie County.

9. Personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382 (A)(1).

10. Venue is proper pursuant to Civ. R. 3(C)(2).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

12. Layhue is a former employee of Ventra.

13. Layhue is African American.

14. Ventra hired Layhue on or around May 29, 2014.

15. Ventra hired Layhue as a manufacturing technician.

16. During part of her employment with Ventra, Layhue worked as an assembly supervisor.

17. Upon information and belief, Layhue to promoted to a supervisor position by Kaitlyn Brewer and Keith Boyle.

18. Prior to being promoted to a supervisor position by Brewer and Boyle, Layhue had, two-to-three times previously, applied for a supervisor position.

19. During the previous occasions that Layhue applied to be promoted to a supervisor position, she interviewed with McGuire, the plant manager.

20. McGuire is Caucasian.

21. During every occasion that Layhue interviewed with McGuire for a supervisor promotion, McGuire denied Layhue the supervisor position.

22. During each of the occasions that Layhue interviewed with McGuire for a supervisor promotion, upon information and belief, McGuire awarded the promotion to a Caucasian male employee.

23. As an assembly supervisor, Layhue reported directly to McGuire.

**EXHIBIT A**

24. After Layhue became an assembly supervisor, McGuire treated her and other African American employees in a disparate manner.

25. In or around November 2019, McGuire instructed Layhue to write up Roger Morgan for allegedly being tardy.

26. Morgan is African American.

27. Morgan was not late or tardy.

28. Morgan had left his work area to get a new pair of safety glasses because the pair he had been using were scratched or otherwise damaged.

29. Layhue knew that Caucasian employees would not have been written up if they were late or missing from their work area due circumstances similar to Morgan's.

30. Layhue felt that the instruction from McGuire to write up Morgan was discriminatory against Morgan based on his race.

31. Layhue complained to McGuire that she could not write Morgan up for something Caucasian employees did without receiving any disciplinary action.

32. Layhue complained to McGuire that the instruction to write up Morgan was discriminatory based on Morgan's race.

33. In or around November 2019, Layhue spoke to Human Resources Representative, Emma Opfer, regarding her complaint to McGuire concerning the instruction to discipline Morgan.

34. Layhue communicated her race discrimination complaint to Opfer.

35. Layhue told Opfer that, "Roger says he is being targeted by Ed because of his race, and to be honest, I think he is telling the truth."

36. Upon information and belief, despite Layhue's race discrimination complaint, Ventra did not investigate the complaint.

**EXHIBIT A**

37. Soon thereafter, in December 2019, McGuire participated in placing Layhue on a performance improvement plan ("PIP").

38. Jared Martin participated in issuing the PIP to Layhue.

39. Martin disclosed to Layhue that the directive to place Layhue on a PIP came from McGuire.

40. Upon information and belief, prior to Layhue's December 2019 PIP, she had not received any disciplinary action for any alleged performance concerns during her employment with Ventra.

41. In the beginning of February 2020, during a work group chat, another employee, Danny (Last Name Unknown), used some slang language when speaking to Layhue.

42. Layhue was confused by Danny's use of slang and asked him what he meant.

43. Layhue was offended by Danny's conduct.

44. Jason Hacker, a Caucasian Plant Manager, saw the conversation between Layhue and Danny in the group chat.

45. Hacker told Layhue that he was making a note in her file regarding the conversation because, according to Hacker, "conversations like these are not what that app is intended for."

46. Hacker reprimanded Layhue for conduct that she did not engage in.

47. Hacker reprimanded Layhue for Danny's conduct in the group chat.

48. Layhue went to Human Resources Representative, Chris Estep, after she was reprimanded.

49. Layhue told Estep that she believed Danny's comments in the group chat were racially insensitive.

50. Layhue told Estep that she believed Danny's comments in the group chat were racially discriminatory.

51. Layhue told Estep that she should not have been reprimanded by Hacker for Danny's conduct.

52. Layhue complained that she was being racially discriminated against by Hacker due to the reprimand for conduct she did not engage in.

**EXHIBIT A**

53. Upon information and belief, despite Layhue's second race discrimination complaint, Ventra did not investigate the complaint.

54. On or about February 14, 2020, approximately one week after Layhue's second race discrimination complaints, Ventra terminated her employment.

55. McGuire participated in the decision to terminate Layhue's employment.

56. Ventra's purported reason for terminating Layhue was based on alleged performance issues.

57. Ventra's purported reason for terminating Layhue was a pretext for race discrimination.

58. Ventra's purported reason for terminating Layhue was a pretext for retaliation.

59. Layhue suffered damages as a result of Defendants' conduct.

### COUNT I: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

60. Layhue restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

61. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

62. As a result of the discriminatory conduct described above, Layhue complained about experiencing discrimination on the basis of race.

63. As a result of the discriminatory conduct described above, Layhue complained about witnessing discrimination against others in the workplace on the basis of race.

64. Subsequent to Layhue reporting unlawful race discrimination, Layhue suffered adverse actions.

65. Subsequent to Layhue reporting unlawful race discrimination, Layhue was terminated.

**EXHIBIT A**

66. Defendants' actions were retaliatory in nature based on Layhue's opposition to the suspected unlawful conduct.

67. Defendants violated R.C. § 4112.02(I) by disciplining Layhue in a retaliatory manner.

68. Defendants violated R.C. § 4112.02(I) by terminating Layhue in a retaliatory manner.

69. As a direct and proximate result of Defendants' retaliatory discrimination against Layhue, she suffered and will continue to suffer damages, including economic, and emotional distress damages.

### COUNT II: RACE DISCRIMINATION

70. Layhue restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Throughout her employment, Layhue was fully competent to perform her essential job duties.

72. Defendants treated Layhue differently than other similarly situated employees based on her race.

73. Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Layhue due to her race.

74. Defendants terminated Layhue based on her race.

75. Defendants violated R.C. § 4112.01 *et. seq.* by terminating Layhue based on her race.

76. Layhue suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

77. As a direct and proximate result of Defendants' conduct, Layhue has suffered and will continue to suffer damages.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

78. Layhue restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. Ventra is a covered employer under the FMLA.

6

**EXHIBIT A**

80. During her employment, Layhue suffered from one or more serious health conditions, including anxiety and panic attacks.

81. Defendants were aware of Layhue's serious health conditions.

82. In late 2019, Layhue's mother suffered from a heart attack.

83. As her primary care giver, Layhue was late to work on a few occasions because she had to take care of her mother.

84. Layhue's supervisors were aware that she was late to work because she was taking care of her sick mother.

85. Around the same time, Layhue began suffering from anxiety and panic attacks.

86. Layhue's panic attacks were so severe that she had to be treated by the medical team at Ventra and then sought further medical treatment outside of work.

87. Layhue requested medical leave in order to care for and/or treat her serious health condition(s).

88. Layhue requested medical leave in order to care for her mother, as needed.

89. Defendants knew that Layhue needed medical and/or FMLA leave for her serious health condition(s).

90. Defendants knew that Layhue needed medical and/or FMLA leave for her mother's serious health condition(s).

91. During this period of time, Layhue was a qualified employee under the FMLA.

92. Layhue was unlawfully denied leave under FMLA.

93. Defendants failed to apprise Layhue of her FMLA rights.

94. Defendants allowed Layhue to accrue absences and/or tardies for instances that would have qualified as FMLA-excused absences.

95. Defendants interfered with Layhue's proper utilization of FMLA.

**EXHIBIT A**

96. As a direct and proximate cause of Defendants' conduct, Layhue suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

WHEREFORE, Layhue respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Ventra to retroactively restore Layhue to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Plaintiff for lost wages, unpaid wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Layhue's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*

Fred M. Bean (0086756)
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Fred.bean@spitzlawfirm.com

*Attorney for Plaintiff Monica Layhue*

## EXHIBIT A

## JURY DEMAND

Plaintiff Monica Layhue demands a trial by jury by the maximum number of jurors permitted.

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
THE SPITZ LAW FIRM, LLC

# EXHIBIT A

If Undeliverable, Return To
LUVADA WILSON
ERIE COUNTY
CLERK OF COURTS
323 COLUMBUS AVE
SANDUSKY, OHIO 44870



9214 8901 9403 8300 0033 5926 63

2021 CV 0089   /Z 000 084 395
Ventra Sandusky LLC
c/o Karen Lukco
3020 Tiffin Avenue
SANDUSKY, OH 44870

**EXHIBIT A**



# COURT OF COMMON PLEAS, ERIE COUNTY
323 Columbus Avenue, Sandusky, Ohio 44870
## SUMMONS
Rule 4 1970 Ohio Rules of Civil Procedure

### Judge Roger E. Binette

### Case No. 2021 CV 0089

**Plaintiff(s):**
Monica Layhue
264 E. Merrill Street
Campbell NE 68932

**SUMMONS ON COMPLAINT**

vs.

**Defendant(s):**
Ventra Sandusky LLC
c/o Karen Lukco
3020 Tiffin Avenue
SANDUSKY OH 44870

**CERTIFIED MAIL**

and

Ed Mcguire
c/o Ventra Sandusky, LLC
3020 Tiffin Avenue
SANDUSKY OH 44870

To the above-named defendant(s):

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff's attorney or upon the plaintiff's if he/she has no attorney of record, a copy of your answer to the complaint within **28 days** after mailing of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three days after service on Plaintiff's Attorney.

The name and address of the plaintiff's attorney is as follows:

Fred M Bean
The Spitz Law Firm
The Watertower Plaza
Beachwood OH 44122

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

March 4, 2021
Z000084395

LUVADA S. WILSON, Clerk

By *Hortense Miller-Woods*, Deputy

**EXHIBIT A**